Good morning, Your Honor. My name is Martin Anderson. I'm with the Anderson Law Firm. I represent the plaintiff, Diana Kolev. We made a motion to submit the case on the briefs, which the court denied. But I still feel that the briefs say everything that I would say if I were to stand here. And so, unless the court has any specific questions for me, I would submit and reserve the balance of my time for rebuttal. Let me ask you a very substantial question in my mind. It seems to me that there's some indication in this record that there's some kind of a written warranty agreement that was put together between these two parties. The only agreement that I see in this record is the agreement that I have suggested is, it's the agreement, I was trying to get the name of it, I don't know that I can see the name on my particular page, but it's on page 278 and 279, 280 of the transcript. I mean, I've looked all over for some additional written warranty agreement other than this agreement that is right here in the record that the parties entered into upon the sale of the vehicle, and I can't find any other agreement. All right, let me address that. There's a couple of answers to your question, Judge Nelson. Sorry, Judge Smith. I made the card out there. I am severely flattered to be Judge Nelson. She may not be so flattered to be Judge Smith. And you introduced yourself before the hearing, so there's no excuse. It's just nerves. And this is my first time appearing before the Ninth Circuit, so please accept any errors in the light of that. But to answer your question, there are a number of agreements between the parties. There are some agreements that are implied by law. There are some agreements that aren't written agreements. That's true. There is separate written warranty agreement. There is, but it is not directly between the parties. The written warranty agreement was issued by Porsche Cars North America. By operation of California law, it is treated as if it is issued by the dealer, but even though it is not. That is a – it's either a statutory or judicial fiat. There's a case from – I think it's the 70s under California law that says that we interpret the warranty because it is handed to the consumer by the dealer as having come from the dealer. So even though it's Porsche's warranty agreement under California law, you would give me the case, I guess, that would suggest that becomes the dealer's agreement, unless the dealer agrees with this. They won't. They will not agree with this. Well, then, I guess I need the case. I can give you the case. Because it seems to me that your arguments about whether this arbitration agreement is on the face of the contract or whether it isn't is absolutely on the face of the agreement I have in front of me. Oh, there's no doubt that there is an arbitration clause on the back of the 24-inch long pre-patch contract. Not only is it on the back, but it's on the front. And, in fact, your client signed right underneath it that they agreed to it. I don't think that that's correct. Well, if you look on the bottom of the agreement itself, it says, You agree to the terms of this contract. You confirm that you signed the contract. We gave it to you, and you'd be free to take it and review it. You acknowledge that you read both sides, including the arbitration agreement on our claim, part of the contract on the reverse side, before signing that you confirm. Then I read the buyer's signature. Oh, I agree that there is a reference to the arbitration clause on the front side near the client's signature. I disagree with the characterization that the client actually signed the arbitration agreement. That's the difference. Oh, I see. You don't say they signed on the back, but you agree they signed on the first right under the clause that says, We know it's on the back, and we've read it. Absolutely. I see. Absolutely. And that makes it procedurally unconscionable? No, Your Honor. What makes it procedurally unconscionable is that it was a contract of adhesion entered into by parties with vastly different bargaining powers. Whether or not it was disclosed, whether or not it was up front, is not the issue for procedural unconscionability. All right. Let's go on one further. Sure. Do you suggest that your client couldn't have argued about the price of the auto? I think there's no evidence in the record one way or the other on that subject. Okay. Well, then how can I suggest that this is procedurally unconscionable for failure to negotiate when there's no evidence to suggest they couldn't have? Well, I think there is evidence in the record on whether the arbitration clause was negotiable. Well, the arbitration clause is merely part of the agreement. It's not the whole of the agreement, and I have a tough time even not to take judicial notice. I've never bought a used car that I didn't disagree with the price and get it lower than it was. And all you're suggesting is that every part of this agreement somehow needs to be negotiable in order for it to be adhesive. No. I absolutely am not. Okay. Then what's your argument that it's a contract of adhesion? It was negotiated between parties of vastly different bargaining power, and the arbitration clause was presented on a take-it-or-leave-it basis. I am not arguing that none of the contract was negotiable. The point is that... Is there a good case in California that would suggest that if, in fact, one can negotiate some terms of the agreement but not others, that that makes it an adhesive contract? Yes. In the Gutierrez versus Autowash case... Gutierrez says that it is. Gutierrez... In every circumstance. Because I read Gutierrez to deal only with the arbitration itself, not with the other terms. And I don't think in Gutierrez there were any terms which were negotiable. I think that in Gutierrez the evidence was the same as there is here. If you take judicial notice that the price is negotiable, then you should take it in Gutierrez as well. I think we know the price is negotiable because in the form there's a blank spot where the price is inserted. It's fair and reasonable to infer that if there's a blank spot on a form, that that term was negotiated and is negotiable. I think it's also fair to assume that a pre-printed language on the back, surrounded by a box, is not negotiable. And as a practical matter, I think you can take judicial notice of the reality of the situation is that when people go in to buy cars, they don't look at these details. That's why the courts require that before you're forced into arbitration, two requirements have to be met. It has to be procedurally conscionable and substantively. Even if we have procedural unconscionability, you're allowed to force an arbitration clause on someone who doesn't know it exists. That's okay, as long as it is fair. As long as it's substantive. Correct. I think we make a mistake when we get hung up on procedural unconscionability. The issue of procedural conscionability is simple. Were the parties in vastly differing negotiating positions, and was it submitted on a take-it-or-leave-it basis? And the undisputed evidence on this appeal was that it was. But that is not the end of the inquiry. If you hold in this case that this contract is procedurally unconscionable, you are not saying that every arbitration clause entered into these circumstances is invalid. We just get to the real meat, which is, is it fair? Because if it's fair, we'll enforce it anyway. And I want to tie this back to what arbitration is. Arbitration isn't just a different judge deciding the case. It isn't just not a jury. Arbitration is a form where the rules of civil procedure don't apply, where discovery can be limited or denied. I don't think you've got to waste time about arbitration, explaining what it is. You know, the Supreme Court loves arbitration. And there are lots of cases that explain it and why it's such a wonderful idea. Sure. To tell us that arbitration in general doesn't follow the civil rules or isn't like a court decision, I think we know all that, and whether we agree with you or don't doesn't matter. The Supreme Court has made it clear that that's the policy that the courts have to follow, is to favor arbitration. Well, but what matters is that it be fair. If it's fair, if the parties agree to a fair process, we will let them, enforce them, to go into a procedure. If you want to continue to discuss this issue, tell us why this is not a fair provision. Well, it's very simple, because it imposes costs that greatly exceed the cost of litigating in federal court. I didn't know anything could exceed the cost of litigating in federal court. Well, the cost of litigating in federal court is $350. Oh, you mean filing the fees? The filing fees, certainly. Okay. Certainly, the attorney's fees are roughly the same. I mean, really, the total transaction cost. But the cost of arbitrating under this agreement would have been in the order of $15,000. Not only that, it reserved all the relief the dealer would have sought, had it had a claim, for outside of arbitration. It provided the dealer with an escape clause, an appeal to a three-judge panel, which would have imposed even more burdens, right? Take the $15,000, multiply it by three for the appeal, if the award was over $100,000, or if the award was zero. Now, in this case, we couldn't take advantage of that, because we got an award that wasn't zero. They are required to change the springs on the vehicle. That's an award that wasn't zero, so we can't appeal. But if we won the case, if we had gotten what we sought, restitution of the purchase price of the vehicle alone would have been $90,000, plus attorney's fees, they would have had a right to appeal. This is a one-sided agreement. It is an unfair agreement. And under these circumstances, we don't – the law does not allow a district court to say, we're going to force the plaintiff into a proceeding where even the substantive law is negotiable. Because, of course, an arbitrator doesn't have to follow the law. They just have to be reasonable. Now, you cited the Zica's case, but isn't that case distinguishable because here, at least the clause gives the plaintiff her right to appeal in the event of a complete loss? Well, as I just said, I mean, that – no, that doesn't. Because if the plaintiff has a complete loss, if you just – the judge just did not buy what the plaintiff was selling, it's much less likely that the plaintiff would want to appeal. The more probable appeal would be if there was an error of law where the facts were found in plaintiff's favor, but the law was not followed. And that, in fact, is what happened here. The judge found that there was a misrepresentation, that the vehicle was sold with springs that were wrong, and instead of awarding the proper remedy, which would have been restitution, $90,000 plus fees and costs, he awarded a repair remedy. Just take the springs off, put the correct springs on, and by the way, even though I gave you relief, you're not the prevailing party, so you get nothing as far as transaction costs. That situation is the most probable circumstance that the plaintiff, that the appellant, the car buyer, the ordinary consumer is going to want to appeal, because there the facts were found in his favor, but the law was not followed, right? If the facts were against him, he'd be up against an abusive discretion standard. What law required the arbitrator to suggest that they could only either get all the money back, or simply rule for the other side? No law, because the arbitrator, in fact, had everything in front of him, came to a middle ground in this situation, and suggested at that point the middle ground was appropriate. No, no law, because the arbitrator doesn't have to follow the law. There is nothing in the contract to suggest it either. No, no, not the contract, the statute. There is a statute that if we were before a district judge, and the findings of fact that this arbitrator made were undisputed, we would have won, and we would have gotten restitution under California Civil Code Section 1793.2D, 1794A, and under the Consumer's Legal Remedies Act, Civil Code Section 1770 and 1780A. It's just undisputed. Yes, the arbitrator here did what an arbitrator is allowed to do. He did what he decided was fair, taking into account the rights of business and business necessities, not following the law. That's what he did. And before we force people into that forum, the contract has to be substantively and procedurally cautionable. It doesn't matter that after we're forced into it, the defense agrees to use a different forum or to change the rules, which is in fact what they did here. What matters is that this one wasn't, and we ought not to have been forced into that. The plaintiff had a right to her day in court before an Article III judge, to her day in court with her case decided on its legal merits, and that's not what happened. It's just not what happened. I just have a question. Is the warranty itself in the record? I don't think so. I couldn't find it. If it's here, I'd be grateful if someone referred me to the record. I believe it's not because the party who petitions to compel arbitration did not submit it and did not advocate that it contains an arbitration clause. I can certainly represent to the court what it does. I can also submit it supplementally if the court wants, but it basically has a magma. It seems to me, however, that might have been important for you to have made sure was on the record because there is no question that in this record we have an agreement which necessarily agrees to arbitration, necessarily agrees to what arbitration ought to be and what it ought not to be, and if one determines that it is not unconscionable, then you're stuck unless you can get out under Magnuson-Moss. Magnuson-Moss or the California... And if I don't have a warranty agreement in there that suggests differently, and I am reading Magnuson-Moss, then I guess as the other circuits have construed it and then don't have a warranty agreement in there that suggests differently, I might construe that against you as well rather than going with some district court provision. Well, I don't think that the court ought to construe that against me because it was the defendant's burden to identify the arbitration agreements, to prove an agreement to arbitrate. Well, there is an arbitration agreement right here. But I'm saying you should not infer that there is an imagined arbitration agreement in the warranty that was issued by Porsche Cars. In fact, Porsche Cars did not petition to compel arbitration and the district judge specifically declined to compel arbitration against Porsche. So I'm supposed to just suggest because there's an absence of record that you don't have to have arbitration when the only agreements I have here are that you do? No, no. You should rule based upon the arguments that were made in the district court and the arguments that are made here, which is whether the contract is enforceable. That is our position. Our position is this contract is not enforceable under California law. It is not enforceable under the Magnuson-Moss Warranty Act. And it is not enforceable under the discretionary provisions of California law because of the potential for an empty chair defense. And in fact, that's where we are. The potential for what? The potential for the empty chair defense. We have these findings by the arbitrator, which Porsche has already said in papers that are in the record, it is going to use to assert collateral estoppel, which means not only do we not get a judge and a jury and application of the law in our claims against the dealer, we won't get it on our claims against Porsche E. Your time is up. Thank you. May I have some time for rebuttal, Your Honors? We'll give you a minute or two. Thank you very much, Your Honor. Good morning. My name is Aaron Jacoby. I'm here for Euromotors West. Going right to the warranty issue that you brought up, just as a quick mention, this was not a warranty case against the dealer. That's why there's no warranty in the file. This was a Song-Beverly claim under California law, a Consumer Legal Remedies Act claim under California law, and the applicable agreement was and remains the agreement that you do have in front of you. The warranty agreement is between Porsche Cars and the consumer. It may be administered in the sense that the dealer does do the repair, but that can be any dealer, by the way. It doesn't have to be the particular dealer. And it is administered in the sense that when the car is bought, to the extent it still comes with a manufacturer's warranty, which this one did, it is handed over to the consumer. It seems to me you're both agreeing that the arbitration provision that we should consider in this case is the one contained in the contract. That's correct. I just wanted to end the curiosity about why the warranty. Well, you may not end the curiosity, but as I understand it, that doesn't matter because you're not arguing that either of you, that we rely on the warranty or the arbitration provision. That's correct. You're correct. I also wanted to just... But curiosity, there is one. There is a warranty agreement. It is between the manufacturer and the consumer. Yes. It may apply. You don't agree on this. It may apply in this case under California law, but we don't need to consider that. Correct. But for curiosity, that's... For curiosity, it is there. No, no. Don't answer. I will not. Okay. I will move on. All right. So move on to the arbitration provision in the purchase agreement or sales agreement. What the district court found is that the adhesion argument was weak at best. He found this, the judge found this to be a form contract with many places that not only allowed for negotiation, but where negotiation was even drawn to the attention of the purchaser. For example, with regard to the interest rate, there is a comment on the agreement itself that says something to the effect, I have it over here, the exact quote, but something to the effect that be aware that the interest rate is negotiable. Certainly, everybody knows that price is negotiable. And certainly, as you pointed out earlier... Use Judge Smith. Yes. Go ahead. I like Nelson, but go ahead. As Judge Smith pointed out... Use, okay. Go ahead. Excuse me for saying you. As Judge Smith pointed out, there's a section directly underneath the arbitration notice where the customer signs. They also sign just above the portion where they're noted that the agreement is negotiable, et cetera. Another point, the record indicates that this is a $93,000 or so used vehicle. Purchased and pre-owned, isn't it? Pre-owned vehicle. Yes. Excuse me. My client will now have my head. This is a luxury vehicle. This is not a computer that comes with a pre-formatted arbitration agreement of some kind. This is not an agreement we're testing in the employment context where somebody absolutely has to have the job that they're in. This is someone going in to buy... Somebody might absolutely have to have a Porsche. Well, this person absolutely had to have 76 luxury cars because this is his number 76 luxury car that he's purchased, the underlying record indicates. And this is someone who's very used to not only buying but selling, et cetera. The plaintiff knew what was being signed. The plaintiff signed in multiple spots on the agreement. This is essentially just a form contract that allows the parties to negotiate within the form. Moving on to substantive conscionability, the arbitration provision itself is fair. To say some of the things that were said, I would classify them as disingenuous. The costs are covered. The filing costs up to $1,500 are covered. We didn't have $1,500 in filing fees. Many of the arbitration services, including the one we use, require that the defendant pay the arbitrator's fees. The rules that govern the arbitration process are accessible via the Internet. They're not going to be printed out on the contract. That would make the contract even longer than the huge length it is. As I understand the contract, there is no specific arbitration provision as to who will arbitrate. That's correct. Therefore, it seems as if what the contract says is that we don't set out the rules because we don't know who's going to do it. It could be American arbitration. It could be a national arbitration or any other organization. That's correct. Of the two that are set forth as possibilities, those rules are available on the Internet, and that's what the district court found. In fact, the district court judge went on the Internet before the hearing and said that he had great ease in finding those rules. In fact, we ended up mutually selecting JANS, which has its own rules. By the way, the judge who presided over the arbitration hearing and the underlying decision is in the record is Judge Pratt, who was the presiding judge at the Norwalk Superior Court. He conducted a hearing that was by the rules of evidence, by the rules of civil procedure, and certainly by the law governing the Consumer Legal Remedies Act and the Song-Beverly Act. What is the total evidence we have that COLEB would have to pay these costs? Isn't it the council's declaration? Yes. There is no evidence that costs were paid because costs were not paid. Is there any evidence in the record that she paid any cost? There should be none because none were paid. And I didn't find any place in there where it was disputed or ever claimed that she paid. That's correct, and we paid. Didn't she get free arbitration? I'm sorry? Free arbitration? Well, I don't know what her deal with her council is, but with regards to the arbitrator himself, that's correct. The arbitration itself was not free. Our client paid the arbitration fee, costs. Paid for the arbitrator's fees? Paid for the arbitrator's fees. And is that provided for in the agreement, or is that just out of the goodness of your heart? It's provided for in the agreement that the dealer will pay up to $1,500 in costs. I'm not sure if I can use the word most, but quite a few of the major private mediation and arbitration services require that in consumer cases that the business pay the fees and costs. And JAMS is included in that number. And JAMS is the service that we use. Judicial Arbitration Mediation Service, for the record. It's also my understanding here that there's nothing in here that says there's a mandatory fee-splitting provision. There's any discretion to award all the costs and fees to the non-prevailing party. None of that kind of stuff is in this particular agreement, is it? That's correct. And under the law of the case that we've argued, pursuant to the Consumer Legal Remedies Act and the Song-Beverly Act, fees and costs are provided only for the plaintiff unless the case is found to be frivolous,  So that would make Engle versus Circuit City really unapplicable in this particular case, correct? That's correct. And there's a major product difference there also. In the Circuit City type of cases where you're talking about electronic goods and some form of arbitration or even class arbitration comes along with the product you buy, that's significantly different than an experienced, sophisticated luxury car buyer going in to buy car number 76 and negotiating a price, et cetera, with a dealer on a pre-owned car. I said it right that time. I think it would be good for you to talk about the Appeal Clause because that seemed to be the only argument counsel really looked at. Okay. The Appeal Clause does have for both parties the opportunity for an arbitration appellate panel. And that is in the event that either there's a complete loss or a victory, I suppose, for the plaintiff in excess of $100,000. Neither of those things happened. Judge Pratt, the arbitrator, came down somewhere in the middle, lower in the spectrum of the middle than halfway. He did not split the baby. He simply said that to the extent that there were springs to be replaced, they should be replaced. But he didn't find the kind of fraud or nondisclosure or other issues that were being pled or asserted under the Consumer Legal Remedies Act or the Song-Beverly Act. He found simply that there may have been some faulty springs and ordered that they be replaced. Well, but as I understand counsel's argument, that's not according to California law, and that's why that makes that clause unfair. Well, I don't know that California law is before us, but it is actually part of the type. The Consumer Legal Remedies Act provides that a remedy can be provided. It's not required that the remedy be rescission. In fact, often the argument in the class actions that we argue many times before the California courts, the argument on the one hand is there must be rescission, and on the other hand, no, a remedy of XYZ is sufficient. It's simply not a requirement under the Consumer Legal Remedies Act that you go either for full rescission or nothing at all. So I think that the no appellate, he's arguing that there's unfairness with regard to the appellate setup within the provision. It defines parameters. The parameters essentially cover what the possibilities are with the luxury automobile at hand. It is possible that the judge could have awarded something in excess, at least in value of $100,000, and it is possible that the court could have awarded zero. Judge Pratt, I keep saying the court. I apologize. Judge Pratt, the arbitrator, did neither. I don't know the exact value of the springs, but they have some value, and he ordered that a correction be made. Let me just ask, why don't we under Chevron have to defer to the FTC's determination that the MMWA bars arbitration of COLOS Express warranty claims? First of all, the case against the dealer is not brought under that provision. The claims that were arbitrated were Consumer Legal Remedies Act and Song-Beverly Act, better known as the Lemon Law in California. The MMWA claim against the manufacturer survives, and once this process is over with the dealer, I assume that the district court will lift its stay as to the MMWA act, and that act will proceed against the manufacturer who has the warranty with the consumer, and Mr. Anderson and his client will be able to move forward with that claim against Porsche. And by that I mean Porsche Cars North America, PCNA is how we colloquially refer to them. So your argument is that it's because the mandatory arbitration clause is in the sales contract rather than in the warranty? Correct. We're not arguing here at all under the warranty. We're arguing with regard to the sales issues. That makes the issue that you all seem to say was, well you at least thought was academic, it seems to make it dispositive about whether you are bound by the warranty clause, by the warranty agreement under California law. We are not bound by the warranty agreement under California law. You have a disagreement with counsel about that? We do, except that I'm not sure that our disagreement on that issue is before this court. Well, does your brief say that the difference is because it was in the sales agreement rather than the warranty agreement, and that you're not bound by, or the act doesn't apply unless it's in, unless the arbitration's a warranty provision? Neither appellant nor appellee brought up the Magnuson Moss Warranty Act or the agreement, excuse me, the warranty agreement between Porsche Cars North America and the consumer because it's not at issue here. Didn't they say you were bound by the Magnuson Moss Warranty Act? They may, they asserted claims that were parallel. There are portions of the Magnuson Moss Warranty Act that are also represented in California law under the Consumer Legal Remedies Act and the Song-Beverly Act. The case that was sent to arbitration and what was arbitrated were the Consumer Legal Remedies Act claims and the Song-Beverly Act claims. The Magnuson Moss Warranty Act claims pursuant to the warranty between Porsche Cars North America and the consumer remain before the district court. Those claims were not extinguished, and with regard to collateral estoppel arguments, there may be certain factual issues that perhaps would be persuasive. I'm not sure how the district court will take it, but number one, an arbitration decision is not precedential. Number two, the parties are not the same parties. It's the consumer and the dealer, not the consumer and the manufacturer. The agreement is different. We're talking about the sales agreement between the dealer and the consumer, and that governs all of the issues concerning the sale of the vehicle. What was the price? What was the interest rate? What did the car come with? What did it not come with, et cetera. The warranty agreement, which is not before us, but we all know, I think we can take judicial notice in a sense, that a warranty covers things that break on the car, et cetera, not the repairs and sales issues and quasi-fraud type of issues that were at issue in the arbitration regarding the dealer and the consumer's transaction. And I think where we agree is that because we were litigating the issues between the consumer and the dealer, that it was the sales contract that the district court looked to, and it was the sales contract that provided for arbitration. It was the sales contract that set up the issues that came between dealer and consumer, and it was the sales contract and the law governing the sales contract, the Consumer Legal Remedies Act, the Song-Beverly Act, that the arbitrator, Judge Pratt, decided. Well, it seems to me pretty clear from the plaintiff's brief. They say that five of the six claims for relief, religion, plaintiff's complaint, are asserted under the Federal Magnuson Moss Warranty Act. As I said, the Magnuson Moss, the relevant portions of the Magnuson Moss Act that were asserted are also found under the Consumer Legal Remedies Act and the Song-Beverly or Lemon Law. They may also be found there, but they're saying that under the Magnuson Moss Warranty Act, you cannot compel them to engage in arbitration. There can't be a pre-dispute binding arbitration agreement. Well, first of all, I still assert that that's not before this Court, but I would disagree that an arbitration clause could not be asserted. I think it would be more likely to be found procedurally and substantively unconscionable because unlike a sales contract, which is what governed the issues between the parties here, a warranty is more like the computer contract where you simply hand over and you say, Judge Nelson, this is yours. There's nothing to negotiate, nothing to sign. With regard to a sales agreement, which is what governed the dispute between these parties, and that's the dispute that we have before us here, that's a different story. We've given you an extra four minutes. Okay. Thank you very much, Your Honors. Okay. We'll give you two minutes. Thank you, Your Honors. First of all, I want to address a couple of factual misstatements. There is no evidence on the record that this plaintiff has purchased 76 cars. In fact, there's no evidence that this plaintiff has ever purchased a car before this one. To answer Judge Smith's question, the arbitration agreement expressly provides two choices for providers. American Arbitration Association or National Arbitration Forum. It does provide that if both parties mutually agree, any other forum can be used. But that basically requires both parties to agree. They did not in this case agree to jams? We did, but you must judge the fairness of the arbitration clause based upon how it was written. They could have said, no, we won't do anything other than NAF, which the Missouri Attorney General shut down because it was a shill for the collection industry, or AAA, which no longer hears consumer arbitrations because of the perception of unfairness. This agreement as written gave the plaintiff two choices. Anything else was subject to the graciousness of the defendant. We should not judge arbitration agreements based upon whether the defendant might play nice after it gets the order compelling arbitration.  This agreement had lots of blank spaces that were negotiable. It had an option to buy or not buy credit insurance, for example. It had five or six places to sign or initial to elect to choose or not choose things. But arbitration was not one of them. There wasn't one spot on this agreement where you could say, no, I don't want arbitration. It was in the preprinted language. And by the way, Judge Smith, I looked for the language that you read to me at the beginning. I could not find it. That doesn't mean it's not there. But there are three places. I read it right from the agreement. So either I have a bad agreement or? Well, there are three places where the plaintiff had to sign on the front, right? One was no cooling off. One was no guarantee. One was the illegible. One was if you have a complaint, you should do to the city attorney. I have it. I have it right here. I'm looking at it on my computer. There's no cooling off and right off to the side of no cooling off. There's a whole part of the agreement that says you agree to the terms of this. And my has struck out some. You confirm that before you give it, we gave it to you. You had a free chance to look at it and review it. You agreed the terms. You confirm that before you sign it, we gave it to you. You took it free. You acknowledge that you read both sides, including the arbitration claim on the reverse side. Signing below, you confirm that you received the complete. And right below, there's the signature. There's three signatures right in a section at the bottom. And to imagine that a consumer read any of this before signing it, I think, is fantasy. But I want. Your time is up. If you've got something you wanted to tell us. There is. 30 seconds. Thank you. There was no evidence that the rules of evidence were followed at the hearing in this case. They were not. There is no evidence on that. There is no evidence that the defendant paid the fees of the arbitration. I'm not going to make a rebuttal. Are you going to stand up here and say they didn't? No. I'm simply going to say that it's irrelevant because we judge whether an arbitration clause is fair based upon how it is written and not the gratuitous concessions that the defendant makes at the end. And I want to close with this. The arbitration agreement is quite clear on costs. Quite clear. And it does not say what the defendant says. It says, we will advance your filing, administration, service or case management fee, and your arbitrator or hearing fees all up to a maximum of $1,500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. So the language in this agreement is you pay everything over $1,500. And we might even be able to get that back. There's nothing in the agreement that says you'll be able to get your share back if you win. That's up to the arbitration rules. That's it. I had one more ten seconds. Well, it's too late. I mean, it could have been important. We should have done it by now instead of telling us what the contract says, which we can read. All right. Thank you. Thank you, Your Honor. Case discharge will be submitted. That's the end of the cases for oral arguments. The court will stand in recess.
judges: Nelson D. W., Reinhardt, Smith N. R.